## KLOPFER v. KELLER, Administrator.

LEGISLATIVE POWER — *authority of district courts to appoint special terms.* The statute (ch. 25, sec. 9, Revised Statutes, 267) which confers authority upon district courts to appoint special terms of such courts is valid.

UNLAWFUL DETAINER *before justice of the peace — question of title.* In an action of unlawful detainer against a tenant holding over, brought before a justice of the peace, the effect of raising the question of title is to remove the cause to another court, and not to defeat it altogether.

PLEADING AND PROOF — *in unlawful detainer.* The rule which requires that the proof shall support the allegation is as applicable to the action of unlawful detainer as to any other.

EVIDENCE — *to disprove plaintiff's case.* In an action of unlawful detainer against a tenant holding over, for the purpose of disproving the tenancy, the defendant may show that he entered as a purchaser and not as a tenant, and this whether the agreement to purchase was good or bad.

*Appeal from District Court, Arapahoe County.*

UNLAWFUL detainer against appellant to recover the possession of certain premises alleged to have been let to him for one month, which term had expired.

Mr. E. L. SMITH, for appellant.

Mr. L. B. FRANCE, for appellee.

HALLETT, C. J.   At the threshold of this case we encounter the objection that the proceedings in the court below were *coram non judice*, having taken place at a special term. The point arises upon the validity of the statute authorizing district courts to appoint special terms of the same court, there being no question in this case as to the manner in which the power was executed.   It is within our knowledge that many special terms of court have been held under this statute, and important questions have been determined in them, which, if now disturbed, will occasion much embarrassment, and we have attempted to give the subject such consideration as its importance demands.

In 1856 (11 Stat. 49), congress empowered the justices of the supreme court, in each of the territories, to appoint the times and places of holding courts in the several districts

of their territory, and, provided, that courts should be held at but one place in each district.    In 1858 (11 Stat. 366), this statute was so far enlarged as to admit courts to be held at the expense of the territory in the several counties in each district.  In 1861 the act organizing this territory was passed, which provided :   "The said territory shall be divided into three judicial districts and a district court shall be held in each of said districts, by one of the justices of the supreme court, at such time and place as may be provided by law."

The use of the singular instead of the plural number in this clause of the act was, doubtless, through inadvertency, as, in view of the previous legislation of congress to which reference has been made, it is hardly probable that congress intended to limit the number of courts in each district to one. But this act confers upon the legislative assembly power to prescribe the times and places of holding courts, and being inconsistent with the act of 1856, renders the latter act inapplicable to this territory.   The power of the legislative assembly to prescribe the times and places of holding courts is conceded, but whether that power is properly exercised in conferring upon the courts authority to appoint terms is a question upon which doubts have arisen.

In *Harriman* v. *The State*, 2 G. Greene, 270, this question came before the supreme court of Iowa upon a statute passed by the legislative assembly of Iowa territory, under a provision of the organic act of that territory, similar to our own. In that case the court say :   "Finally it is objected that the legislature of the territory had no right, under the ninth section of the organic law, to pass an act authorizing the judges to hold such special terms of the district court, as they were by said section to be held at such times and places as might be prescribed by law.   Strictly viewing this clause, it may very plausibly be assumed that the courts may be held at such times only as the appropriate law might fix upon and designate.   The application of this principle might safely be admitted so far as the regular terms of the courts are concerned ; and this concession would not, in the least, militate against the power of the legislature to authorize the judges

to hold special or extra terms of their courts whenever, in their opinion, occasion might require.   This would be a rightful subject of legislation within the meaning of the organic law and within the province of the legislative assembly."

In the State of Illinois the constitution of 1818 provided that circuit courts should be held at the times prescribed by law, and with this provision in force the legislature authorized such courts to appoint special terms.   The constitutionality of the law does not appear to have been brought in question, although the act was before the supreme court of that State upon other points.   *Archer* v. *Ross*, 2 Scam. 303.

We find, from an examination of the reports of other States (1 Blackf. 428 ; 17 Mo. 64; 16 Cal. 186 ; 3 Wis. 443), that such acts are not uncommon in this country, and the constitutional power of the legislature to pass them is so generally accepted by the profession that it has not been questioned.

Therefore, upon authority, we believe that the question is at rest, and we are not disposed to seek for a new construction which may divest established rights.

A motion was made in the court below to dismiss the cause for want of jurisdiction in the justice of the peace before whom the suit was originally commenced.   It is claimed that an affidavit was filed under the ninth section of the act before the justice of the peace, in which it was asserted that the title to the property described in the complaint was in dispute between the parties.   Although such an affidavit was read in the district court, it does not appear that it was ever presented to the justice of the peace.   And if it had been so presented, and the justice had refused to act upon it, it is difficult to see upon what ground the dismission of the cause would result from it.   The effect of raising the question of title before a justice of the peace is to remove the cause to another court, and not to defeat it altogether. It is not necessary to point out the various cases in which an action may be maintained under the statute relating to forcible entry and detainer.   It is sufficient to say that this

action was founded upon section 5 of the act, which relates to cases of tenancy. It is alleged in the complaint, that the premises in controversy were let to appellant for the term of one month, which term had expired, and that appellant refused to surrender the possession upon demand made in writing therefor. This is according to section 11 of the act, which requires that the substantial facts, upon which the plaintiff relies, shall be set out in the complaint. The office of pleading is the same in this action as in every other, and the rule which requires that the proof shall coincide with the allegations is as applicable to this as to any other action. To allow a plaintiff to allege one thing and prove another would be an anomaly in the law, and most mischievous in its consequences. If then the plaintiff must prove his case, as laid in the complaint, it follows that evidence tending to disprove the facts stated in the complaint is admissible on the part of the defendant, although such evidence might also tend to prove another case upon which the plaintiff might, if he had so declared, maintain his action. Upon the trial in the court below, appellant introduced evidence to show that he went into the possession of the premises in controversy as a purchaser. This evidence the court afterward excluded from the consideration of the jury upon the ground, as stated by counsel, that the agreement to purchase was not valid under the statute of frauds. Now the question before the jury was as to the existence of the tenancy set out in the complaint, and whether appellant was holding over after the expiration of his term, and if the agreement between the parties was to purchase and not to let the premises, it can make no difference whether the agreement was void or valid. The object of showing that appellant entered under an agreement to purchase was to disprove the tenancy, and the negative effect of such evidence would be the same whether the agreement was good or bad.

We think that there was error in excluding this testimony from the consideration of the jury, for which the judgment must be reversed with costs and the cause remanded.

*Reversed.*